IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:24-cv-00064-BO-RN

TAMMIIKA FROWNER,
    Plaintiff,

v.

FAYETTEVILLE STATE UNIVERSITY,
    Defendant.

ORDER

This matter is before the Court on Defendant Fayetteville State University's (FSU) motion to dismiss the amended complaint [DE 10]. For the following reasons, the motion to dismiss is denied.

## BACKGROUND

Plaintiff Frowner was employed in the library at Fayetteville State University (FSU), a component of the University of North Carolina system. She alleges that on January 7, 2022, Larry Treadwell, a white supervisor, fired Robert Ballard, an African American man who worked in the FSU library. On November 10, 2022, Frowner received a negative performance evaluation from Treadwell [DE 5-2 at 1].

On November 25, 2022, Frowner engaged in protected activity by filing a grievance with FSU Human Resources about what she believed to be Treadwell's discriminatory treatment of Ballard and other African American employees. Treadwell and Frowner entered mediation, but did not reach a resolution. FSU decided to take no further action on the complaint.

On April 17, 2023, Treadwell issued Frowner a second unsatisfactory performance evaluation. On May 2, 2023, Frowner filed a complaint with the Equal Employment Opportunity

Commission [DE 5-2 at 2]. Shortly thereafter, Treadwell placed Frowner on suspension for three days, then fired her on June 28, 2023.

Frowner claims that she was retaliated against for engaging in protected activity, and that such retaliation violated Title VII of the Civil Rights Act and the provisions of the North Carolina Whistleblower Act. After Defendant FSU filed a motion to dismiss, Plaintiff Frowner voluntarily withdrew her Whistleblower claims [DE 17].

## ANALYSIS

Defendant FSU has moved to dismiss under Rule 12(b)(6) for failure to state a claim upon which relief can be granted. A motion for failure to state a claim upon which relief can be granted tests the complaint's legal and factual sufficiency. *See* Fed. R. Civ. P. 12(b)(6). The focus is on the pleading requirements under the Federal Rules, not the proof needed to succeed on a claim. "Federal Rule of Civil Procedure 8(a)(2) requires only a short and plain statement of the claim showing that the pleader is entitled to relief, in order to give the defendant fair notice of what the . . . claim is and grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). This standard does not require detailed factual allegations, *ACA Fin. Guar. Corp. v. City of Buena Vista, Virginia*, 917 F.3d 206, 212 (4th Cir. 2019), but it "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Nadendla v. WakeMed*, 24 F.4th 299, 305 (4th Cir. 2022).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, 'to state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). For a claim to be plausible, its factual content must allow the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. Although the court accepts the factual allegations as true, the court does not accept the

2

complaint's legal conclusions, so "simply reciting the cause of actions' elements and supporting them by conclusory statements does not meet the required standard." *ACA Financial Guaranty Corporation*, 917 F.3d at 212.

"In the context of a Title VII case, 'an employment discrimination plaintiff need not plead a *prima facie* case of discrimination' to survive a motion to dismiss." *Bing v. Brivo Sys., LLC*, 959 F.3d 605, 616 (4th Cir. 2020) (quoting *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 515 (2002)). Rather, a Title VII plaintiff is required to plausibly allege facts that satisfy the elements of a cause of action created by that statute. To succeed on a claim of retaliation, the plaintiff must allege and ultimately show (1) that she engaged in protected activity; (2) that the employer took an adverse employment action against her; and (3) that there is a causal nexus between the protected activity and the adverse action. *Foster v. Univ. of Maryland-E. Shore*, 787 F.3d 243, 250 (4th Cir. 2015).

In the present case, Frowner alleges that there were two sets of retaliatory actions taken by Treadwell after Frowner had engaged in protected activity, each of which would provide adequate grounds for a Title VII claim. The Court shall address each in turn.

### I. The Unsatisfactory Performance Evaluations

Frowner alleges that she was given a negative performance evaluation by her supervisor, Larry Treadwell, after she had filed a complaint about Treadwell with FSU's Human Resources department [DE 5 at 3]. She alleges that she received a second negative evaluation on April 17, 2023. Defendant FSU says that these evaluations are insufficient to support a Title VII claim because a negative evaluation is not an "adverse employment action" within the meaning of the statute. The Court agrees.

"[A]n adverse employment action is one that a reasonable employee would have found materially adverse, which... means that [the action] 'well might have dissuaded a reasonable

3

worker from making or supporting a charge of discrimination.'" *Rigg v. Urana*, 113 F. Supp. 3d 825, 829 (M.D.N.C. 2015) (quoting *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006)). Adverse employment actions typically include "hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits." *Hoyle v. Freightliner, LLC*, 650 F.3d 321, 337 (4th Cir. 2011).

Here, the unsatisfactory performance evaluation did not result in demotion, a loss of pay, or other adverse employment consequences. The evaluations, standing on their own, are not the type of adverse actions contemplated by Title VII and cannot independently sustain a cause of action.

Further, both negative evaluations are distant in temporal proximity to Plaintiff's protected activity. The first negative evaluation took place on November 10, 2022 [DE 5-2 at 1], weeks before the plaintiff states that she engaged in protected activity by filing a complaint with FSU HR. The second negative evaluation took place on April 17, 2023, five months after she had contacted FSU HR and two weeks before she filed a complaint with the E.E.O.C. The Fourth Circuit has stated that a period of "three to four months" between the protected activity and adverse employment action is "too long to establish a causal connection by temporal proximity alone." *Pascual v. Lowe's Home Centers, Inc.*, 193 F. App'x 229, 233 (4th Cir. 2006). Therefore, the negative performance evaluations do not qualify as "adverse employment events" under Title VII.

## II. The Three-Day Suspension and Subsequent Termination

Next, Frowner alleges that Treadwell suspended her from work immediately after she filed a retaliation complaint with the Equal Employment Opportunity Commission, and that Treadwell subsequently fired her [DE 5 at 4]. Termination certainly meets the definition of adverse employment actions, and demands further discussion.

4

Defendant FSU argues the plaintiff has not alleged facts sufficient to show the existence of a causal connection between the plaintiff's filing of a complaint with the E.E.O.C. and the subsequent adverse employment actions. In particular, they argue that Frowner has failed to adequately allege that Treadwell knew of the E.E.O.C. complaint.

It "is absolutely necessary to establish the third element of the prima facie case" of retaliation that the plaintiff allege facts demonstrating that the employer knew that the plaintiff was engaged in a protected activity, because "an employer cannot take action because of a factor of which it is unaware." *Dowe v. Total Action Against Poverty in Roanoke Valley*, 145 F.3d 653, 657 (4th Cir. 1998); see also *Constantine v. Rectors & Visitors of George Mason Univ.*, 411 F.3d 474, 501 (4th Cir. 2005) (applying *Dowe's* knowledge standard to a motion to dismiss). Knowledge is necessary for causation—as such, on a motion to dismiss, the court looks for some evidence that the plaintiff has adequately alleged "knowledge of the adverse actor" in her complaint. *Valerino v. Holder*, 2013 WL 12432290, at *11 (E.D. Va. 2013).

Here, the plaintiff states that "the individual responsible for Defendant's retaliatory action knew of Ms. Frowner's protected activity at the time of the retaliation." [DE 5 at 5]. In Plaintiff's reply to Defendant FSU's motion to dismiss, she points to this same statement. [DE 18 at 2]. Standing alone, this particular allegation is a conclusory statement that "does not meet the required [pleading] standard." *ACA Financial Guaranty Corporation*, 917 F.3d at 212.

However, contrary to FSU's assertion that the E.E.O.C. charge is the only relevant protected activity for the suspension and firing, it pays to look at the entire sequence of alleged events. After Frowner's initial report to FSU HR on November 25, 2022, she entered into mediation with Treadwell that lasted for five months and ended on April 13, 2023. For the purposes of a retaliation claim under Title VII, protected activity can consist of "opposing a practice

5

prohibited under Title VII... or making a charge, testifying, assisting, or participating in an investigation, proceeding, or hearing under Title VII." *Pitter v. Cmty. Imaging Partners, Inc.*, 735 F. Supp. 2d 379, 395 (D. Md. 2010) (citing 42 U.S.C. § 2000e-3(a)) (emphasis added). Even if news of the E.E.O.C. charge did not immediately reach Treadwell, the plaintiff has adequately pled facts suggesting Treadwell's awareness of plaintiff's protected activity.

Next, defendant argues that the plaintiff has failed to allege that the retaliation was a but-for cause of the adverse employment action. But-for causation, however, is an element of proving retaliation, not pleading retaliation. *Guessous v. Fairview Prop. Invs., LLC*, 828 F.3d 208, 216–17 (4th Cir. 2016) (citing *Univ. of Texas Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 360 (2013)). The pleading standard under Title VII is not a high one, and "merely the closeness in time between the filing of a discrimination charge and an employer's firing an employee is sufficient to 'make a prima facie case of causality.'" *Tinsley v. First Union Nat. Bank*, 155 F.3d 435, 443 (4th Cir. 1998). The time between plaintiff's filing of her charge with the E.E.O.C. and her firing was eight weeks. The time between the conclusion of FSU's internal grievance proceedings and plaintiff's firing was eleven weeks. Both are within the temporal window of three months recognized by the Fourth Circuit as adequate to infer causation. *Jackson v. Rex Hospital*, 2020 WL 6532829, at *3 (E.D.N.C. 2020) (citing *Williams v. Cerberonics, Inc.*, 871 F.2d 452, 457 (4th Cir. 1989).

For these reasons, Plaintiff Frowner has adequately pled that Treadwell was aware of her protected activity at the time the adverse employment action was taken, and the closeness in temporal proximity between the protected activity and the adverse employment action is adequate to infer causation. Plaintiff Frowner has therefore successfully made out a claim for Title VII retaliation, and this case must proceed to discovery.

## CONCLUSION

Taking the allegations in the complaint as true, the Court determines that Frowner has pled an adequate case of Title VII retaliation. As such, Defendant Fayetteville State University's motion to dismiss [DE 10] is DENIED.

SO ORDERED, this 19 day of November 2024.

_____
TERRENCE W. BOYLE
UNITED STATES DISTRICT JUDGE

7
Case 5:24-cv-00064-BO-RN     Document 21     Filed 11/19/24     Page 7 of 7